Rosia Murray,
Widow of John Joseph.

No. 8 0 9 6 .

—vs—

Court of Appeal.

U. S. Industrial Alcohol
Company.

Parish of

Orleans.

BINKELSPIEL. J.

Dinkelspiel. J.

This litigation presents but one single and solitary question; whether or not, defendants were or were not the employers of deceased, husband of plaintiff.

Plaintiff, Rosia Murray. widow of John Joseph, he dying in this City, on the 31st. of March, 1919. That at the time of his death and prior thereto, her husband, was in the employ of defendant company, the U. S. Industrial Alcohol Company. That he was employed as a porter at defendant's office, at Ferdinand and Pine Streets, in the City of New Orleans, at the time of his death, and was earning the sum of $18.20. per week.

Plaintiff is informed, believes and avers that in addition to his duties as porter, it had been the custom of her husband, getting the orders and directions of officials and persons in authority and control of defendant company to return after hours for the purpose of going out with other workmen in the river to assist in tying up ships, carrying cargos of molasses consigned to defendant company. That for such services, her husband, working overtime received 50 ¢ per hour, averaging the sum of $3.50. per week. That her husband, as porter both for work done in that capacity and for overtime work earned in assisting to tie up molasses ships consigned to defendant company, an average of $21.70. per week. That on the evening of March, 31st. 1919, at about 8 o'clock, her husband together with two fellow workmen, acting under the orders and directions of the superintendant of defendant company returned to said company for work,; that the Steamship Cubadist,

638

loaded with molasses, consigned to defendant company,
had been informed and she so avers, that her husband
and his fellow workmen were ordered to report back
in order that when the ship arrived to go out in a
skiff in the river, tie the ship to the piling at
the head of Ferdinand Street, there being no wharf or
pier at said point.

That her husband and his fellow workmen following
the orders of the Superintendant of said company, as
had been the custom for several years in the past,
and receiving for said extra work 50¢ per hour from
the time of reporting his return to work. The in- until/
coming ship had been moored to the piling at the
head of Ferdinand Street and deceased, her husband,
and his fellow workmen returned to the shore.

Further alleging, that about 10.30. at night, on
the aforesaid date, the Steamship Cubadist arrived,
and that plaintiff's husband and his two fellow work-
men in the skiff had tied the headline  to piling in
front of defendant company, and the deceased and his
fellow workmen had  returned to the ship, in the
skiff,to secure the forward breastline, with a heavy
coil of rope or hawser so thrown from the ship to the
skiff, landing on the skiff, causing same to be cap-
sized and her husband and his companions to be thrown
into the river; that notwithstanding her husbands
struggles in the water for sometime he finally  was
sunk and was drowned.  That all this was done under
the orders and instructions  of his superior officers
and deceased in nowise contributed to his own injuries
and death.

That under the compensation law, plaintiff as a
dependant upon her husband, is entitled to recover

639

from defendant company, compensation for the death of her husband, at the rate of $5.42. per week for 300 weeks, and there is now past due her, plaintiff, the as compensation from March, 31st. 1919 to February, 20th. 1920, 48 weeks, $260.16.

She also alleged that she is in necessitous circumstances, unable to pay costs of this suit in advance or as they accrue or give bond, that she be permitted to file this suit under the terms of Act No. 156 of 1912, and finally prayed for judgment/ ̲a̲g̲a̲i̲n̲s̲t̲ ̲d̲e̲fendant company in the sum of $260.16 past due as compensation from 31st. March 1919 to 20th. February, 1920, with legal interest from date of judicial demand, and the further sum of $1.365.84. in weekly installments of $5.42. per week from February, 20th. 1920, from week to week for 252 weeks, for general and equitable relief.

The answer of defendant virtually denies all the allegations of plaintiff's petition, except as hereinafter admitted, as follows,; Admits that deceased, John Joseph, was employed by defendant company by the day, and was paid at the end of the week for the number of day's labor which he performed during the week at 30¢ per hour; that at the time of his death having checked out from his day's work at 4.30. p. m. on March, 31st., and there after being employed and engaged with other laborers by the Master or Captain of the Steamship Cubadist, to moore and make fast said steamer to the pier, during which time and in connect- ̲w̲i̲t̲-ion with which employment said Joseph came to his death.

Admits, that deceased, Joseph, was employed by defendant company by the day, but denies that he

averaged $18.20., but avers that ne averaged usually
51 hours per week, for which he was paid 30¢ per hour
or $15.30., the employment being by the day, and de-
ceased being paid for the number of hours of work
actually performed per day.
Denies,
Admits, further, that deceased returned to work to
receive overtime,,but avers the fact to be that after
he checked out after his days work, was no longer in
the employ of defendant, but accepted seperate and
distinct employment from the Captain of the steamer
Cubadist, for work which the Captain desired him and
others to perform, and that he was not paid for such
work by defendant at the end of the week as overtime.

Further, denies, that deceased received directions
and orders from defendant's superintendent; denies
he did not return to defendant for work in connect-
ion with his employment, as said employment had ceas-
ed; that deceased had frequently earned money by tying
or mooring steamships which were delivering merchan-
dise to defendant company, but that employment was in
nowise connected with the employment of deceased with
defendant.

Defendant admits that the deceased while working
for the Captain of the Steamer Cubadist, came to his
death by drowning, in attempting to moore or tie up
said steamship to the piling.

Defendant denies that at the time of the accident
that deceased was in the employ of defendant, or that
his injuries or death occurred while deceased was per
-forming services either arising out of or inciden-
-tal to his employment by defendant company, hence
prays for judgment and dismissal of plaintiff's suit.

641

On the trial of the case besides the testimony of plaintiff, who absolutely knew nothing safe and except that her husband was dead, he worked as porter for defendant company, there was introduced several colored witnesses, Perkins, Lockburn & Crozier, and after these witnesses had testified, and after the trial of the case, by consent, two other colored witnesses, Brown and David Joseph, who testified, and the substance of their testimony as we read it substantially confirms what defendant's plea really is, to the effect that all these men more or less, from time to time, had worked for the defendant company on various and different engagements; that the deceased was a porter in the employ of the company, xad and that on the night in question he was ordered by the Engineer of the Cubadist, to go out in a skiff in the river in order to tie up to the landing the Steamship Cubadist, so that her cargo, which was entirely molasses, could be pumped into defendant's warehouse, and that was the entire employment made by the steamship company and not by defendant company, and this was the universal custom , not only in this particular case and for this particular steamship, but in all similar cases of a like character.

Wilfred Casser, was the Engineer of defendant company; had been in their employ for twenty years; knew deceased, John Joseph, who was the porter in the employ of defendant company, and in speaking of how defendant got it's molasses for the manufacture of Alcohol from the tank steamers he goes on to say; the steamer comes up under her own steam, and three men in a skiff tie her up, they get ten dollars for that work and they were paid by the Captain of the Steamship; never were employed for that purpose

642

by defendant company; that defendant company never know when a Steamship comes in for the purpose of tying to the wharf and unloading it's product, but when they hear of it they employ men to do simply the tying and nothing more in order that the product can be pumped into the ship, but they have no connection whatever with the employment of getting these men and these men are paid by the Steamship making an independant fee and are ever seeking this employment for an extra compensation that they receive. That deceased, Joseph, received 30¢ per hour for the work that he did for defendant company, and at the time when he met his death the company paid him a full days extra wages in order to make the molasses connection, and in addition to that he got ten dollars from the Captain of the Ship for tying and untying the vessel, and deceased and all other workmen fully knew and understood the arrangement.

Q- If they are not there do you put a stranger in it?
A- I would have to have men to do the work.
Q- Where do the lines come from that ties the boat?
A- This boat?
Q- Yes.
A- From the Cubadist.
Q- Who throws the lines?
A- The Mate attends to the handling of the lines and gives the orders.
Q- The lines are thrown from the vessel or ship, under orders of the Mate?
A- Yes.

Q- And the Mate instructs these men where and how to tie? -A- Yes, Sir.

Q- Have you anything to do with it at all?
A- No, Sir; I can't give them any orders.

Q- You have to wait until the ship is tied up before you can make connection? -A- Yes, Sir.

Q- Could you get the molasses without making connection with the ten inch hose? -A- No, Sir.

Q- You connect with the , what?
A- With the ships pipe, I have to pump it in the hose.

He goes on further to say that the Steamship Cubadist was lost and never heard from and this was admitted by Counsel for plaintiff.

Q- Now, Mr. Gasser, the only extra time you pay these men is the extra day? -A- Yes; for each connection.

Q- Is the payment by the Captain of ten dollars for tying up charged to the defendant company?
A- No, Sir.

Q- In any way? -A- No, Sir.

Q- They have nothing to do with it?
A- No, Sir; they have nothing to do with it after I bring them back, if the ship left at 2 o'clock, for instance, and the men have to come back, they just come back, they don't punch the card, they come back for the purpose of getting their ten dollars.

Q- How long is a ship detained at the wharf to to unload the molasses?
A- It is between 26 and 28 hours.

Q- So, the arrangement of deceased, Joseph, with the Captain of the Cubadist the night h lost his life, and with the Captains of v

prior to his death, so that he would get ten dollars from the Captain for tying and untying the vessel? - A - Yes, Sir.

An examination of this record fully and wholly satisfies us that this witness, Gauser, told the unvarnished and absolute truth; that deceased nor any of his co-laborers were at the time of the unloading of this vessel in the employ of defendant company, not only in this case, but in all similar cases and it is a frequent occurrence, hence, the compensation act has no effect in this particular case, because the deceased nor his fellow workmen were not employed by defendant company at the time when this unfortunate accident happened.

The authorities cited by plaintiff 40, A. & E. An. Cases. 1294 - 131.673. have no application. It is the implied and not the contractual liability of natural as well as artificial persons which is treated of in the chapter of the Code entitled, "Offenses and quasi offenses", and it is founded on fault, negligence, imprudence and want of skill, and constitutes an act illegal, and the obligation of the participant solitary.

"A party alleging want of skill or diligence must prove the same. No damage will be allowed on the simple charge of a diligence or want of skill, unless it is made to be sustained by satisfactory proof."

Kirk vs. Nelson 20 Ann. 506, Benson vs. LaBranche 31 An. 121.

"The plaintiff must make his averments and the burden of proof is upon him to show that the alleged injury was the result of the negligence of the defendant."

Stevenson vs. R. R. Co. 35 Ann.499; 35 Ann. 607; 36 Ann. 34.

For the reasons herein assigned, it is ordered, adjudged and decreed, that the judgment of the lower Court be and the same is hereby affirmed with costs against plaintiff in both Courts.

Judgment Affirmed.